# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUTH A. EVERETT a/k/a** | : | |
| **RUTH A. BOWMAN,** | | |
| | : | **CIVIL ACTION NO. 3:11-0926** |
| **Plaintiff** | | |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION[1])** |
| **UNITED OF OMAHA LIFE** | | |
| **INSURANCE COMPANY,** | : | |
| | | |
| **Defendant** | : | |

# M E M O R A N D U M

Pending before the court are: (1) the report of the magistrate judge which considers the defendant's motion for summary judgment and recommends that the motion be denied and the matter be remanded to the defendant's plan administrator for further proceedings and (2) the defendant's objections to the magistrate judge's report. Upon review of the pending matters, the court will decline to adopt the report of the magistrate judge, the defendant's objections will be sustained, and the court will direct that summary judgment be entered in favor of the defendant.

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 4, 2013, the matter was reassigned to the undersigned.

## I.    PROCEDURAL HISTORY

By way of relevant background, on April 7, 2011, the plaintiff, Ruth A. Everett, formerly Ruth A. Bowman, filed the instant action in the Court of Common Pleas of Carbon County. The action was removed to this court on May 13, 2011. (Doc. No. 1). In her complaint, the plaintiff alleges that the defendant wrongfully denied her ERISA life insurance benefits as the beneficiary of a life insurance policy on her late husband, Rocky Everett, ("Mr. Everett")[2].

On October 19, 2011, the defendant filed a motion for summary judgment, (Doc. No. 8), along with a statement of material facts, (Doc. No. 9), and a supporting brief, (Doc. No. 10). On December 7, 2011, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment, (Doc. No. 14), along with a statement of material facts in support of her opposing brief, (Doc. No. 15)[3]. Defendant filed a reply brief on January 3, 2012. (Doc.

---

[2]The complaint originally set forth state law claims as well. However, after removal, the parties stipulated that the complaint would assert only a single ERISA claim under 29 U.S.C. §1132(a).

[3]Contrary to L.R. 56.1, the plaintiff did not file a statement of material facts responsive to that filed by the defendant in support of its motion for summary judgment. As a result, the magistrate judge deemed admitted the defendant's statement of material facts for purposes of the summary judgment motion. That being said, the magistrate judge recognized that the Local Rule neither requires nor prohibits the submission of additional material
(continued...)

No. 18).

By report dated August 17, 2012, the magistrate judge considered the defendant's motion for summary judgment. In doing so, she found that the defendant waived any requirement that the plaintiff provide evidence of Mr. Everett's good health when she submitted her enrollment forms after the sixty-day required deadline and, as such, any decision by the defendant to deny coverage on the basis of the sixty-day deadline and the absence of evidence of good health was arbitrary and capricious. In addition, the magistrate judge found that the defendant's denial of life insurance benefits on the basis that Mr. Everett was disabled at the time of enrollment due to end stage lung cancer was not supported by substantial evidence, as the sole evidence relied upon was Mr. Everett's death certificate. Because there was no medical evidence in the administrative record which would establish that Mr. Everett met the conditions for disability under the policy at the time of enrollment, the magistrate judge determined that the defendant's decision that Mr. Everett suffered from a disability at the time of enrollment was arbitrary and capricious. On this basis, the magistrate judge recommended that the matter

---

[3](...continued)
facts by the non-moving party. As the plaintiff's own statement of facts was supported, in part, by record citations, the magistrate judge considered the supported statements on an equal footing with those asserted by the defendant.

be remanded to the defendant's plan administrator for reconsideration. Finally, the magistrate judge found the plaintiff's argument that the defendant was estopped from denying coverage and/or had waived its right to deny coverage based upon its acceptance of premiums did not provide a basis upon which coverage could be found. (Doc. No. 20).

On August 29, 2012, the defendant filed objections to the magistrate judge's report. (Doc. No. 21). The plaintiff filed a response to the defendant's objections on September 12, 2012. (Doc. No. 22). The defendant filed a reply brief on September 18, 2012. (Doc. No. 23).


## II.    STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no

objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

## III. DISCUSSION

As the plaintiff failed to properly respond to the defendant's statement of material facts in support of its motion for summary judgment, the magistrate judge deemed the defendant's facts admitted. These facts provide, in relevant part, that the plaintiff and Mr. Everett were married on May 20, 2010. As of that date, Mr. Everett had end stage lung cancer which had been previously diagnosed. According to the plaintiff, the marriage qualified Mr. Everett as an "eligible dependent" pursuant to the applicable life insurance policy issued by the defendant as part of the plaintiff's benefits plan in connection with her

employment with the National Rural Letter Carriers Association, ("NRLCA").

On August 9, 2010, the plaintiff signed a Long-Term Disability and Term-Life Insurance Enrollment Form and sought to enroll her husband for $50,000 of life insurance coverage[4]. In relation to this enrollment, Mr. Everett did not undergo a physical examination nor did the plaintiff submit any health report or evidence of good health on behalf of Mr. Everett.

Mr. Everett died on October 5, 2010, less than two months after the plaintiff sought to enroll him for life insurance coverage, as a result of "respiratory insufficiency," which was a consequence of "end stage lung cancer." Subsequent to Mr. Everett's death, on or about October 19, 2010, the plaintiff sought death benefits. Upon receiving the plaintiff's claim, on or about October 27, 2010, the defendant began collecting the necessary information to process the claim, including the plaintiff's enrollment forms, the

---

[4]The plaintiff contends both in her complaint and in response to the defendant's motion for summary judgment that, on or before July 15, 2010, prior to submitting the enrollment and allotment forms dated August 9, 2010, a representative from Bill Judge & Associates, Inc., the consulting firm that handled the plaintiff's enrollment, confirmed her enrollment for coverage for Mr. Everett without the need for a physical examination or any other health report or evidence of good health via a telephone conversation. However, other than her own unsupported allegations, the plaintiff has provided no support for this contention. In addition, the policy clearly provides that the enrollment and allotment forms were required to be properly completed and signed within sixty days for an eligible dependant to be insured; otherwise, the dependant would require evidence of good health.

plaintiff's effective date, and the premiums paid to date. The defendant also sought to determine the existence of evidence of insurability for Mr. Everett. In doing so, the defendant contacted Bill Judge & Associates, Inc., ("Bill Judge"), the employee benefits consulting firm which handled the plaintiff's enrollment[5]. Defendant was advised that the plaintiff was timely provided with the applicable forms, but that she failed to complete and return the forms within 60 days from the date of her marriage.

By letter dated November 3, 2010, defendant notified the plaintiff that her claim was denied on the basis that she had not completed the requisite enrollment form within 60 days following the date that her late husband became eligible for benefits and had not provided evidence of good health. The plaintiff was informed of her right to appeal.

By letter also dated November 3, 2010, defendant notified Bill Judge and NRLCA that Mr. Everett was not eligible for coverage and directed a refund of any premiums that may be due to the plaintiff.

---

[5]The undisputed evidence in the administrative record indicates that the defendant had no direct knowledge of the plaintiff's attempted enrollment of her spouse for life insurance benefits. From the record, including e-mail exchanges between the defendant and Bill Judge, the defendant did not receive the plaintiff's marriage license and enrollment forms from Bill Judge until after the plaintiff submitted her claim for life insurance benefits. Upon reviewing this documentation, the defendant determined that the plaintiff had not submitted the enrollment form within the required sixty-day period.

Citing to correspondence from Bill Judge dated August 12, 2010, confirming coverage for Mr. Everett, the plaintiff requested an appeal of the denial of benefits by letter dated December 17, 2010. The plaintiff further appealed on the basis that payroll deductions were made to pay the premium for Mr. Everett's coverage. The defendant acknowledged receipt of the plaintiff's appeal and by letter dated January 18, 2011, notified the plaintiff that the denial of her claim for benefits was appropriate and that no benefits were payable. The defendant indicated that the plaintiff had failed to request enrollment for her spouse within 60 days of her marriage and failed to submit evidence of good health. The defendant further indicated that denial of benefits would be proper based upon the information which indicated that Mr. Everett was afflicted with end stage lung cancer at the time of the plaintiff's request for enrollment on August 9, 2010, which prevented him from being able to provide evidence of good health, and which rendered him disabled prior to the date that plaintiff sought enrollment for him until the time of his death.

As indicated above, the plaintiff did not respond to the defendant's statement of material facts; however, she did provide her own statement of facts. While a majority of the plaintiff's facts are simply supported by reference to her complaint, some facts are supported by reference to three exhibits

which are attached to her complaint. Two of these exhibits were in the administrative record and can be considered by the court. The first exhibit includes the confirmation of enrollment letter from Bill Judge to the plaintiff dated August 12, 2010, and the second exhibit includes fifteen pay statements covering the period from late 2010 into early 2011 showing premium deductions apparently for life and disability insurance. The third exhibit, a functionality report dated March 2, 2010, in which it is indicated that Mr. Everett would be off work from January 4, 2010, until July 4, 2010, while he was undergoing chemotherapy and radiation for lung cancer, was not in the administrative record and, therefore, cannot be considered by the court. See Fleisher v. Standard Ins. Co., 679 F.3d 116 (3d Cir. 2012) (citing Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438 (3d Cir. 1997)). To the extent that the plaintiff's facts are supported by the exhibits which were included in the administrative record, the magistrate judge considered those facts on equal footing to those of the defendant.

The following are the relevant terms of the policy at issue which are not in dispute:

**DEPENDENT ELIGIBILITY**
**Life Insurance Benefits**

**Definitions**

.   .   .

**Dependent** means a citizen, permanent resident or lawful resident of the United States who, as indicated by evidence acceptable to Us, is:

(A) Your lawful spouse;

**Evidence of Good Health** means proof, acceptable to Us, of the Dependent's good health . . .

## When a Dependent Becomes Eligible

A Dependent who is neither confined nor disabled as described in the following paragraphs . . . becomes eligible for insurance on the later of the day You are eligible or the day You acquire the Dependent.

## When Dependent Insurance Begins

You may request Dependent insurance by properly completing and signing enrollment and allotment form(s) acceptable to Us and submitting the form to the Policyholder (who will then submit the form to Us) within 60 days following the date the Dependent becomes eligible.

Insurance for a Dependent, other than a child born while You are insured under this Policy, who is confined:
(a)   in a Hospital as an inpatient;
(b)   in an institution or facility other than a Hospital; or
(c)   at home and currently under the care or supervision of a Physician;

on the day the insurance is to begin will not take effect under such confinement ends or is no longer medically necessary as determined by Us or an independent medical review arranged by Us . . .

Insurance for a Dependent who is physically or mentally disabled to the extent such Dependent is unable to perform all of the usual and customary duties and activities of a person who is the same age and sex who is in good health or is not able to engage in any

work or occupation for wage or profit will not take effect until the Dependent is able to fully resume all usual and customary duties and activities or is able to work for wage or profit.

An eligible Dependent will be insured on the latest of the day
(a)	You become insured;
(b)	You acquire the eligible Dependent; or
(c)	You properly complete and sign the enrollment and allotment form(s) acceptable to Us for Dependent insurance and submit it as described above.

If We do not receive your request to insure Your Dependents within 60 days from the day the Dependent is eligible for insurance, We will require Evidence of Good Health for your Dependent. If such evidence is acceptable to Us, Your Dependent will become insured on the first payroll date following the date We approve the Dependent's Evidence of Good Health.

**Changes in the Amount of Your Dependent's Insurance**

**Life Event**

Within 60 days of a Life Event, You must submit properly completed and signed enrollment and allotment form(s) authorizing the change to Us to change the amount of Dependent insurance. Insurance may be issued up to the Guarantee Issue Limit without Evidence of Good Health. For any amount over the Guarantee Issue Limit, Evidence of Good Health is required. We will use the Policyholder's payroll records and premium We have received to determine the appropriate amount of insurance. We will also require Evidence of Good Health if You do not submit Your written request within 60 days after the Life Event.

.	.	.

If Your written request for Dependent Insurance is received more than 60 days after a Life Event, We will require Evidence of Good Health be submitted for the Dependent and if such evidence is acceptable to Us, the Dependent will become insured in the first payroll date following Our approval of the Dependent's Evidence

of Good Health.

.    .    .

**Life Event** means:

> (a)    You become lawfully married or divorced;

.    .    .

## PAYMENT OF CLAIMS

### Authority to Interpret Policy

The Policyholder has delegated to Us the discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy. Benefits under the Policy will be paid only if We decide, after exercising Our discretion, and that the Insured Person is entitled to them. In making any decision, We may rely on the accuracy and completeness of any information furnished by the policyholder, an Insured Person or any other third parties.

The defendant has raised three arguments in its motion for summary judgment. Initially, the defendant argues that its decision to deny the plaintiff's claim for dependent life insurance benefits was not arbitrary and capricious as a matter of law because it properly determined that Mr. Everett was not eligible for coverage on the basis that the plaintiff submitted the enrollment form more than sixty days after Mr. Everett became eligible for coverage and failed to provide evidence of good health contrary to the terms of the policy.

Second, the defendant argues that the death certificate and information made available to it indicates that Mr. Everett died from respiratory

12

insufficiency due to "end stage lung cancer." The defendant argues that there is no dispute that Mr. Everett had end stage lung cancer prior to his becoming an eligible dependant. Given his terminal illness, the defendant argues that Mr. Everett could not have provided the requisite evidence of good health and coverage would have been refused on this basis.

Finally, the defendant argues in its motion for summary judgment that the plaintiff is not entitled to benefits based on a theory of waiver or estoppel due to the defendant's receipt of premiums. Relying primarily upon precedent from the Middle District, the defendant argues that deduction of premiums from the plaintiff's paycheck alone was insufficient to confer coverage.

Although the magistrate judge made findings with respect to each of the alternative arguments raised in the defendant's motion for summary judgment, only the first of these arguments needs to be discussed herein, as it is dispositive of the action[6].

In considering the arguments raised in the defendant's motion for summary judgment, because the plan administrator was granted discretionary authority to determine eligibility for benefits or construe the terms of the plan, the magistrate judge appropriately applied the arbitrary and capricious

[6]In any event, the court notes that neither party has raised any substantive objections to the magistrate judge's findings as to the latter arguments.

standard of review to the denial of the ERISA claim. See Orvosh v. Program of Group Ins. for Salaried Emps. of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000). Under this standard, the magistrate judge found that the defendant's decision to deny benefits should only be overturned if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000); Abnathya v. Hoffmann-La Rouche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).

With this standard in mind, the magistrate judge considered the defendant's denial of coverage based upon the plaintiff's failure to provide evidence of good health with her enrollment forms which were submitted after the sixty-day time period provided for in the policy. In doing so, the magistrate judge cited to the relevant policy provisions under the heading "When Dependent Insurance Begins." Although the defendant argues that the plaintiff submitted her enrollment forms after the sixty-day deadline and defendant had neither received nor approved evidence of Mr. Everett's good health, rendering him ineligible for coverage, the magistrate judge determined that the defendant's construction of the policy provisions is contrary to the plain terms of the policy, which places no burden on the employee to *sua sponte* submit documents evidencing good health if enrollment forms are submitted past the sixty-day deadline. Instead, the magistrate judge emphasized the

14

policy provision which provides that "*[United] will require* evidence of Good Health for Your Dependent," and further noted the provision that an eligible dependent would be insured ". . . on the last date   . . . you properly complete and sign enrollment and allotment forms *acceptable to us* . . ."[7]

Citing to correspondence dated November 3, 2010, from the defendant to the plaintiff, which indicated "We have received a copy of your marriage license and enrollment form from Bill Judge and Associates[,][8]" the magistrate judge concluded that the defendant was aware from those documents that the plaintiff had not submitted the enrollment and allotment forms within the sixty-day period. Instead of requiring evidence of good health, however, the magistrate judge indicated that the defendant sent the plaintiff a letter dated August 12, 2010, confirming that her spouse was enrolled and had life insurance coverage in the amount of $50,000[9]. According to the magistrate judge, the August 12, 2010, correspondence establishes that the defendant waived its right to require evidence of good health, and chose instead to

---

[7]As noted by the magistrate judge, similar language is contained in other provisions of the policy.

[8]The record reflects that this correspondence was issued after a series of e-mails between the defendant and Bill Judge, which indicate that the materials referred to were received by the defendant only <u>after</u> the plaintiff's claim for death benefits was filed.

[9]The record reflects that the confirmation letter was sent by Bill Judge on behalf of the NRLCA LTD and Life Insurance Program.

afford coverage to Mr. Everett outside of the sixty-day period. The magistrate judge found, therefore, that any decision by the defendant to deny coverage based on the sixty-day deadline and the absence of evidence of good health was arbitrary and capricious.

In its objections to the magistrate judge's report, the defendant first argues that the relevant policy provisions required the plaintiff to submit evidence of Mr. Everett's good health when she submitted the enrollment forms more than sixty days after their marriage. In considering the relevant provisions of the policy relating to when enrollment forms are submitted sixty days after a life event, while the court comes to the same end result as the magistrate judge, (i.e., a construction against the defendant), the court does not use the same means to do so. To this extent, the court finds that the language of the policy can be read, as the defendant contends, to place the burden on the plaintiff to submit evidence of good health in conjunction with an enrollment form submitted after the sixty-day period. The language of the policy can also be read, however, as the magistrate judge construed it, to place the burden on the defendant to request the evidence of good health when an enrollment form is submitted outside of the sixty-day period. The language is ambiguous in this respect. This court has just recently discussed the manner in which ambiguous policy provisions are to be construed:

Generally, "[t]he interpretation of an insurance policy is solely a question of law within the court's province." Hartford Cas. Ins. Co. v. ACC Meat Co., LLC, 2012 WL 4506059, *3 (M.D.Pa. Apr.26, 2012) *report and recommendation adopted*, 2012 WL 4504600 (M.D.Pa. Oct.1, 2012) (citing Geisler v. Motorists Mut. Ins. Co., 382 Pa.Super. 622, 556 A.2d 391, 393 (Pa.Super.Ct. 1989)); Meridian Mut. Ins. Co. v. James Gilligan Builders, 2009 WL 1704474, *3 (E.D.Pa. June 18, 2009). Moreover,

> [i]n construing the policy we are mindful that policy clauses providing coverage are interpreted in a manner which affords the greatest possible protection to the insured . . . The insured's reasonable expectations are the focal point in reading the contract language . . . Our object, as is true in interpreting any contract, is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument . . . Where a provision of a policy is ambiguous, the policy is to be construed in favor of the insured and against the insurer, the drafter of the agreement . . . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Meridian Mut. Ins. Co., 2009 WL 1704474 at *3 (citing Geisler, 556 A.2d at 393) (internal quotations omitted).

Dunn v. Scottsdale Ins. Co., 2013 WL 3947103 (M.D. Pa. Aug. 1, 2013).

Because the relevant policy provisions in this case are ambiguous, the court construes them in favor of the plaintiff. As such, the court finds that the defendant had the burden require evidence of good health where the plaintiff's enrollment form was submitted beyond the sixty-day period. No such demand was ever made of the plaintiff to submit evidence of Mr. Everett's good health.

The question then becomes whether the defendant's failure to require evidence of good health from the plaintiff when her enrollment forms were submitted beyond the sixty-day period resulted in a waiver of its right to deny coverage, as determined by the magistrate judge. Taking the defendant's arguments challenging the magistrate judge's determination of waiver out of order, the defendant argues that the magistrate judge erred in finding waiver because the record does not establish that the defendant intentionally relinquished or abandoned a known right.

Waiver is the "voluntary, intentional relinquishment of a known right." McLeod v. Hartford Life and Accident Ins. Co., 2004 WL 2203711, *3 (E.D.Pa. Sept. 27, 2004) (quoting Pergosky v. Life Ins. Co. of N. Am., 2003 WL 1544582, at *6 (E.D.Pa. Mar. 24, 2003) (citation omitted)). See also Helco, Inc. v. First Nat'l City Bank, 470 F.2d 883, 885 (3d Cir. 1972). In an ERISA action where the plaintiff contends that the insurer waived a requirement of the policy through its actions, it is the plaintiff's burden to show that there is a waiver. See Silva v. Metropolitan Life Ins. Co., 912 F.Supp.2d 781 (E.D. Mo. 2012) (citing Hargis v. Idacorp Energy L.P., 2005 WL 6456898, *7 n.1 (S.D. Tx. Oct. 26, 2005))[10].

---

[10]In this case, the plaintiff did not raise the issue of waiver either in her complaint or in response to the defendant's motion for summary judgment. Instead, the magistrate judge raised the waiver issue *sua sponte*. In its (continued...)

18

In the instant action, the record establishes that the plaintiff completed and signed the forms on August 9, 2010, to enroll Mr. Everett for life insurance coverage and submitted the enrollment forms to Bill Judge. On August 12, 2010, Bill Judge sent the plaintiff correspondence confirming the life insurance coverage for Mr. Everett, the coverage amount for $50,000, and the applicable deductions.

The plaintiff contends that this letter was sent from the defendant and that, at the time of this correspondence, the defendant was aware that the plaintiff had submitted the enrollment and allotment forms beyond the sixty day period. Despite the plaintiff being beyond the sixty-day period, the plaintiff claims that the correspondence from Bill Judge establishes that the defendant accepted the enrollment and allotment forms and enrolled Mr. Everett in life insurance coverage. The plaintiff argues that defendant is unable to point to anything in the record that establishes that the correspondence sent by Bill Judge was unauthorized by the defendant and that any contention that the

---

[10](...continued)
objections to the magistrate judge's report, the defendant argues that the magistrate judge erred in *sua sponte* considering the issue of waiver because it prevented the defendant from having an opportunity to respond to its applicability. By way of its objections to the magistrate judge's report, the defendant has been able to fully present its arguments with respect to the applicability of waiver in this case. Therefore, the court finds that error, if any, in the magistrate judge's *sua sponte* consideration of the waiver issue was harmless.

correspondence or acceptance of the enrollment forms by Bill Judge was not authorized and/or intended to be sent by Bill Judge as agent for the defendant is without merit.

Because an ERISA action involves a federal statute, courts apply the federal common law of agency, not state law, in order to obtain uniformity in agency determinations. See Steinberg v. Mikkelsen, 901 F.Supp.1433 (E.D.Wi. 1995). The Restatement (Second) of Agency provides the federal common law definition of agency. See Taylor v. Peoples Natural Gas Co., 49 F.3d 982 (3d Cir. 1995) (applying the Restatement to determine the federal common law of apparent authority in an ERISA action). The Restatement provides that:

> Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Restatement (Second) Agency §1(1). Pursuant to the Restatement, agency is a legal determination requiring the existence of certain factual elements and is therefore a mixed question of law and fact. Id. cmt. b. The factual elements of agency to be established under the Restatement are: (1) a manifestation of consent by the principal that the agent will act for it; (2) a consent to act by the agent; and (3) subjection to the control of the principal. Id. The party asserting the existence of an agency relationship bears the burden of

establishing the relationship. [Angeloff v. Deardorff, 2010 WL 4853788 (M.D. Pa. Nov. 23, 2010)](citations omitted)).

Here, although the plaintiff has alleged that Bill Judge was an agent of the defendant and argues that the defendant has provided no evidence to the contrary, as argued by the defendant, it is the plaintiff's burden as the party asserting agency to establish the agency relationship. The plaintiff has neither properly alleged such facts in her complaint, nor has she established any undisputed facts on the record from which the court can determine that an agency relationship, in fact, existed between Bill Judge and the defendant. As such, the court cannot find that Bill Judge was the agent of the defendant, such that the actions of Bill Judge in accepting the enrollment forms and issuing the confirmation letter can be imputed to the defendant and establish a voluntary and intentional waiver on the part of the defendant[11].

In the alternative, in its objections, the defendant argues that federal courts are split as to whether waiver should even apply in ERISA cases, and

---

[11]In her report, the magistrate judge referred to the August 12, 2010, confirmation letter as being issued by the defendant and indicated that it served to demonstrate waiver on its behalf. However, it is unclear from the magistrate judge's report the basis upon which she determined that the letter from Bill Judge was issued by the defendant. There is no indication that the magistrate judge made any determination with respect to agency in that respect, and it may be possible that the magistrate judge mistakenly believed based upon the plaintiff's allegations and argument that the letter came from the defendant, as opposed to Bill Judge.

that district courts within the Third Circuit have conducted a case-by-case approach in making such a determination. See Viera v. Life Ins. Co. of North America, 2010 WL 1407312, \*\*11-12 (E.D.Pa. Apr. 6, 2010), *aff'd, in part, rev'd, in part, on other grounds*, 642 F.3d 407 (3d Cir. 2011), (citing Kaelin v. Tenet Employee Ben. Plan, 2006 WL 2382005, at \*7 (E.D.Pa. Aug. 16, 2009) (noting that no precedent exists in the Third Circuit as to whether the common law principle of waiver applies in the ERISA context); McLeod v. Hartford Life and Acc. Ins. Co., 2004 WL 2203711, at \*3 (E.D.Pa. Sept. 27, 2004) (explaining that no consensus exists within the Third Circuit as to whether waiver applies in the ERISA context and noting that courts in the Eastern District of Pennsylvania have conducted a case-by-case approach in determining whether waiver should apply); Pergosky v. Life Ins. Co. of N. Am., 2003 WL 1544582, at \*6 (E.D.Pa. Mar. 24, 2003) (same) (collecting cases).

Under this approach, courts within the Third Circuit have refused to apply waiver in ERISA cases where it would expand the scope of coverage under the ERISA plan to an otherwise ineligible participant. Viera, supra (citing McLeod, 2004 WL 2203711, at \*3 (applying waiver where it would not expand coverage beyond the provisions of the relevant plan); Pergosky, 2003 WL 1544582, at \*6-7 (refusing to apply waiver where it would apply insurance coverage to an otherwise ineligible participant)).

In this case, the defendant argues that the policy required evidence of good health to be submitted if the enrollment was submitted more than sixty days after the life event. The defendant argues that the only evidence regarding Mr. Everett's health in the administrative record is that he passed away from complications of end stage lung cancer less than two months after he sought to enroll for coverage. Further, the defendant argues that it is undisputed that Mr. Everett was diagnosed with end stage lung cancer prior to May 20, 2010, the date he would have otherwise been eligible to enroll in coverage. Thus, the defendant argues that the magistrate judge's finding that it waived the requirement of evidence of good health impermissibly expanded coverage under the policy by rendering Mr. Everett insurable despite the fact that he did not and could not provide evidence of good health at the time of enrollment in accordance with the policy.

In considering the arguments, the court finds the defendant's reliance upon the decisions in <u>Viera</u> and <u>Pergosky</u>, <u>supra</u>, in which the courts refused to apply waiver where to do so would <u>expand</u> coverage of the policy to allow an <u>otherwise</u> <u>ineligible</u> <u>participant</u> to receive benefits under the policy, persuasive.

In addition, the court considers the decision in <u>Matinchek v. John Alden</u>

Life Ins. Co., 93 F.3d 96 (3d Cir. 1996)[12], where, in discussing the issue of waiver, the Third Circuit followed the line of cases holding that waiver is inapplicable where it would expand the scope of coverage, "where the issue is the existence or nonexistence of coverage (e.g. the insuring clause and exclusions)." Id. at 103 (quoting Juliano v. Health Maintenance Organization of New Jersey, Inc., 21 F.3d 279, 288 (2d Cir. 2000)).

Particularly with respect to evidence of good health, other courts have found that where evidence of good health is a required element for coverage, it cannot be waived as it is the plaintiff's burden to establish that she is entitled to benefits in an action brought pursuant to a contract or federal law. See American Society for Technion-Isreal Institute of Technology, Inc., 2009 WL 2883598, *7 (S.D.N.Y. Sept. 8, 2009). Moreover, where the approval of good health is a condition of coverage, the defense of lack of good health will not be deemed waived, regardless of whether the burden was on the plaintiff to submit the necessary documentation or the defendant to request it. Id. (citing Juliano, 221 F.3d 279, 288 (2d Cir. 2000)).

The court, therefore, finds that given the law and facts of this case, including that Mr. Everett was diagnosed with end stage lung cancer prior to his eligibility for enrollment and that he ultimately passed away from this

---

[12]The court recognizes that Matinchek was a non-ERISA case, but relied upon ERISA case law for its findings.

condition less than two months after the plaintiff attempted to enroll him, application of waiver in this case would expand coverage to one who would have otherwise been ineligible under the policy. As such, the court finds that the magistrate judge improperly applied waiver in this case and the court declines to adopt the report of the magistrate judge. Further, the court will direct that the defendant's motion for summary judgment be granted.

## IV. CONCLUSION

On the basis of the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 9, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-0926-01.wpd